UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS J. GUILLOT and                                       CIVIL ACTION
DARNELL GUILLOT

VERSUS                                                      NO. 06-3987

C.F. INDUSTRIES, INC. et al.                                SECTION "N" (2)

## ORDER and REASONS

Before the Court is the **Motion for Summary Judgment (Rec. Doc. 25)** filed by Defendants Continental Casualty Company and Hartford Life and Accidental Insurance Company (together, "Defendants" or "Hartford"). The motion is opposed by Plaintiff Thomas J. Guillot ("Guillot") and his wife Darnell (together, "Plaintiffs"). After reviewing the memoranda, the exhibits, the stipulations of the parties, and the applicable law, the Court rules as set forth herein.

## I. BACKGROUND

Plaintiffs have filed a claim under the Employee Retirement Income Security Act of 1974, or "ERISA," 29 U.S.C. § 101, *et seq.*, challenging Hartford's denial of their claim for benefits under a group long-term disability ("LTD") plan sponsored by Thomas Guillot's employer, C.F. Industries, Inc. That plan was issued by Defendants and Guillot was a participant in that plan. Guillot had been employed by CF Industries as a maintenance technician, repairing

and calibrating process instrumentation and electrical equipment. *See* Administrative Record at 440-442 (hereinafter "AR"). The job required a high school diploma and specialized training. *Id.* It also required Guillot to stand for several hours a day, work with his hands and fingers, use hand tools and power tools, and work both indoors and out. *Id.*

Under CF Industries' LTD policy, a participant is eligible for LTD benefits if during both the "Elimination Period" (180 days) and the next 24 months thereafter, the participant suffers an injury or sickness that causes physical and mental impairment to such a degree that he is unable to perform his job duties and is not otherwise working for wages in an occupation for which he is or becomes qualified by education, training, or experience. *See* Mot. at Ex. B (LTD policy). Together, this 30-month period is known as the "Own Occupation" period. If a participant remains continuously disabled throughout the Own Occupation period, he may continue to receive benefits up to age 65 (the "Any Occupation" period) if he has an injury or sickness that prevents him from working in any occupation for which he is qualified by education, training, or experience. *Id.*

Guillot received full benefits through the Own Occupation period because he suffered rheumatoid arthritis and progressive synovitis that required hip and knuckle joint replacements and bone fusions in his foot. *See* Joint Stipulation (Rec. Doc. 24). He received additional payments once the Own Occupation period ended as Hartford investigated his claim for Any Occupation benefits. In investigating Guillot's claim, Hartford obtained medical records from Plaintiff's treating physicians, Jed Morris and Brent Bankston. Hartford also hired an investigative firm to conduct video surveillance of Guillot and interview him about his daily activities. AR at 242-79.

In the interview, Guillot reported that he could lift 25-pound items and, though his grip was weak, could engage in normal activities such as buttoning buttons, zipping zippers, writing, and driving. He could stand for 30 minutes at a time and had no visual, hearing, or speech impairments. *Id.* at 535-37. He reported that he mowed the lawn using a riding mower, went on walks, performed household chores, helped prepare dinner, and went deer hunting several times during the year. *Id.* at 537-40. He also helped his wife in her computer graphics firm, of which he was listed on tax returns as an owner. *Id.* at 543.

The investigators hired by Hartford observed Guillot engaged in generally normal activities such as using a cell phone, walking in and out of stores, and walking and playing with his dog. *Id.* at 835-36. The investigators also observed Guillot opening the bed of a pickup truck and lifting and carrying what Defendants describe as an automobile windshield, *see* Mot. at 11, though Plaintiffs claim that the item was a lightweight aluminum boat shield, *see* Opp. at 5.

Hartford also engaged Dr. Todd Lyon, a physician who is Board-certified in Family Practice, to conduct an Independent Medical Evaluation ("IME"). After reviewing Guillot's medical records, viewing the video surveillance, and interviewing Dr. Morris, Lyon concluded that Guillot was capable of full-time work that involved occasional lifting of up to 10 pounds and for which Guillot would be primarily seated, but with frequent opportunities to change positions. However, Lyon concluded Guillot could not engage in repetitive keyboarding activities. AR 160-168.

Hartford also conducted a Vocational Assessment, reviewing Guillot's employment history, medical history, and the local job market. AR 155. The review concluded that Guillot

could find full-time employment consistent with his medical condition as a maintenance dispatcher, electronics salesman, or industrial salesman. *Id.*

Based on the video surveillance, the review of the medical records, and the Vocational Assessment, Hartford denied Guillot's claim for Any Occupation benefits on March 25, 2005. AR 149-153. Plaintiffs appealed the denial on April 18, 2005. AR 89-90. Guillot submitted several hundred pages of documentation in support of the appeal. AR 64-836. In reviewing the appeal, Hartford retained a third-party reviewing company to conduct an Independent Medical Review of the record. This company designated Dr. Robert Pick, Board-certified in orthopedics, to review the videos, Guillot's medical records, and interview Guillot's doctors. AR 71-80. Pick concluded that Guillot was capable of sedentary to light occupational activities. *Id.* On the basis of this review, Hartford denied Guillot's appeal. AR 67-68. Guillot filed suit on July 28, 2006. *See* Compl. (Rec. Doc. 1). On January 8, 2008, on joint motion of the parties, this Court vacated its Scheduling Order in order to hear the matter on cross-motions for summary judgment. *See* Order of January 8, 2008 (Rec. Doc. 22).[1]

## II. ANALYSIS

---

[1] Plaintiffs did not file a summary judgment motion. In addition to the instant motion, Defendants filed a **Motion in Limine (Rec. Doc. 28)** to exclude two items attached to Plaintiffs' Opposition: an affidavit from Charles Patton ("Patton affidavit"), who assisted Guillot in lifting the item variously described as an auto windshield or an aluminum boat shield. Patton attests that the item was a boat shield and weighed less than 20 pounds. Defendant also objects to the introduction of a 2002 letter from Dr. Morris ("2002 letter"). In both instances, Defendant argues that these items were not in the Administrative Record on which it based its denial of Guillot's claim, and that this Court's review is confined to that Record. Defendant is correct. *See Gooden v. Provident Life and Accident Insurance Co.*, 250 F.3d 329 (5th Cir. 2001); *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287 (5th Cir.1999) (en banc); *MediTrust Financial Services v. The Sterling Chemicals*, 168 F.3d 211 (5th Cir. 1999); *Pierre v. Connecticut General Life Insurance Co.*, 932 F.2d 1552 (5th Cir. 1991), *cert. denied*, 502 U.S. 973, 112 S.Ct. 453 (1991). Accordingly, **IT IS ORDERED** that the motion is **GRANTED** and the Patton affidavit and 2002 letter are **STRICKEN**.

**A. Summary Judgment Standard**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the

5

nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

**B. ERISA Analysis**

ERISA provides the federal courts with jurisdiction to review determinations made by administrators of employee benefit plans. 29 U.S.C. § 1132(a)(1)(B); *Vega v. National Life Ins.*

*Services, Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc). The district court reviews two elements of the benefit determination: the factual findings of the administrator and the administrator's interpretation of the ERISA governed policy. *Green v. Prudential Ins. Co. of America*, 2005 WL 2036788, at *5 (E.D. La. Aug. 5, 2005).

An administrator's factual determinations underlying a decision to deny benefits are entitled to deference and are reviewed for an abuse of discretion. *Pierre v. Connecticut Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir. 1991). When applying the abuse of discretion standard, courts in this Circuit analyze whether an administrator has acted arbitrarily or capriciously. *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002).

A plan administrator's factual determinations are arbitrary if they have "[no] rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 342 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Michigan*, 97 F.3d 822, 828 (5th Cir. 1996)). A plan administrator does not abuse its discretion if its factual determinations are "based on evidence, even if disputable, that clearly supports the basis for its denial." *Vega*, 188 F.3d at 299. A court must find an abuse of discretion in the absence of "some concrete evidence in the administrative record that supports the denial of the claim." *Id.* at 302. The Court is "constrained to the evidence before the plan administrator." *Id.* at 299.

A plan administrator's construction of the meaning of plan terms and plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect, in which case the review of those decisions is for abuse of discretion. *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004). In this case, Plaintiffs

stipulate that the plan grants discretionary authority to Hartford over the interpretation of the policy. *See* Joint Stipulation at ¶4.

Where, as here, the plan administrator is also the insurer, the administrator has an inherent conflict of interest. *Green*, 2005 WL 2036788, at *6 (citing *Lain*, 279 F.3d at 343). When an administrator acts under a conflict of interest, the Court applies a "sliding scale" to the abuse of discretion standard. *Id.* (citing *Vega*, 188 F.3d at 297). "The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be." *Vega*, 188 F.3d at 297. However, this review "need only assure that the administrator's decision fall somewhere on a continuum of reasonableness–even if on the low end." *Id.*

Under this standard, this Court is unable to conclude that Hartford's decision to deny benefits was arbitrary and capricious. Hartford gave Guillot and his physicians ample opportunity to explain his medical condition and physical limitations. Hartford conducted interviews of both Guillot and his physicians, invited written comments, engaged outside evaluators, and surveilled Guillot in normal daily activities. By his own admission, Guillot is able to function with some degree of normalcy: he can lift light objects, drive, stand for limited periods of time, and is able to do household chores, mow the lawn, and even go hunting, and Dr. Bankston agreed that he was able to do some light work. The conclusions about Guillot's physical limitations that Hartford drew from its review of his medical records are similar to Guillot's own evaluation of his abilities. In the Vocational Assessment, Hartford then applied these limitations to the employment market in Guillot's region of residence and determined that

he could find employment for which he was qualified by training and experience.[2] It then provided Guillot an opportunity to appeal and retained an outside expert to review the appeal. If this Court were making an independent evaluation of the Administrative Record, it might reach a different conclusion than the one Hartford reached. But that is not the Court's task. Rather, the Court is to evaluate whether Hartford's decision lacked any connection to the found facts or the found facts lacked any connection to the evidence. On the showing made, the Court cannot say that either connection is lacking.

In support of his claim that the denial of Any Occupation benefits was arbitrary and capricious, Guillot makes several arguments: (1) that the physician conducting the IME, Dr. Lyon, is not a specialist in orthopedics; (2) that the video surveillance does not show Guillot engaged in anything more than normal activities; and (3) that the medical evidence in the Administrative Record "unequivocally establishes that Mr. Guillot could not perform even light duty work . . . ." Opp. at 5. These arguments are unavailing. There is no requirement that the physician conducting an IME be a specialist, but only that the reviewer be competent to evaluate the record as a whole. Plaintiffs have not shown that Dr. Lyon was incompetent to evaluate the record such that retaining him to conduct the IME was an abuse of discretion. In fact, Dr. Lyon's conclusions did not substantially differ from Guillot's own self-evaluation of his physical condition and abilities. And, it should be noted, the physician who conducted the review of the Administrative Record on appeal, Dr. Pick, *was* Board-certified in orthopedics. Similarly,

---

[2] It should be noted that several circuits have held that in making eligibility determinations, a plan administrator is under no obligation to conduct a Vocational Assessment, as Hartford did in this case. *See, e.g.*, *Townsend v. Delta Family-Care Disability and Survivorship Plan*, 2008 WL 4507571, at *6 (11th Cir. October 8, 2008) (unpublished); *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999).

Guillot's arguments concerning the video surveillance are unavailing, since even if the tapes prove nothing more than that Guillot can walk, lift light objects, and engage in basic normal activities, together this does no more than confirm Hartford's evaluation of the medical evidence, which is itself supported both by Dr. Bankston and by Guillot himself. Certainly, Plaintiffs have made no showing that reliance on these tapes, as one part of an overall review of the Administrative Record, was an abuse of discretion.

Finally, it is simply not the case that, as Plaintiffs claim, the medical evidence in the Administrative Record is unequivocal as to Guillot's total disability.[3] Dr. Lyons concluded that Guillot could perform sedentary work that required merely occasional lifting of light objects and no repetitive keyboarding. Dr. Bankston concurred in this conclusion, AR at 71-80, and Dr. Morris did not express any disagreement, AR at 169-70. This finding was consistent with Guillot's own evaluation of his physical capacities. AR at 534-537. In fact, there is substantial concurrence between the parties and the reviewing and treating physicians as to Guillot's physical condition. The only real question is whether there is a job suited to his training and experience that Guillot could perform. Hartford conducted a Vocational Assessment and concluded that there was, and this Court cannot say that that determination was an abuse of discretion.

### III. CONCLUSION

---

[3] Plaintiffs ask the Court to take judicial notice of the fact that Guillot is receiving Social Security and Medicare benefits for total disability. Opp. at 4. This the Court does, but also notes that the disability determinations of federal agencies are obviously not binding on Hartford. A district court should only give weight to such a determination if a plaintiff shows that the definition of "disability" employed by the agency is similar to that employed by the plan. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 607 (4th Cir. 1999); *Marsteller v. Life Ins. Co. of North America*, 24 F. Supp. 2d 593, 597 (W.D. Va. 1998). No such showing has been made in this case.

For the reasons stated herein, **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 25)** filed by Defendants Continental Casualty Company and Hartford Life and Accidental Insurance Company is hereby **GRANTED**.

New Orleans, Louisiana, this 21st day of January 2009.

_____
KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE